# United States Tax Court

T.C. Memo. 2026-4

KENNETH WALKER AND JULI A. WALKER,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 2801-24L.                    Filed January 8, 2026.

————

*Woodford G. Rowland*, for petitioners.

*Harrison M. Marks* and *Brian A. Pfeifer*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: In this collection due process (CDP) case petitioners, Kenneth Walker and Juli A. Walker, seek review pursuant to section 6330[1] of a determination by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) upholding a proposed levy collection action for tax year 2018 and denying their request for abatement of additions to tax and their challenge to the underlying tax liability.

The issues for decision are whether (1) the IRS was required to issue a Notice of Deficiency before assessment and (2) the determination by Appeals was an abuse of discretion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, and regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times. All monetary amounts are rounded to the nearest dollar.


**Served 01/08/26**

[*2]                          FINDINGS OF FACT

The stipulated facts, which are derived from the administrative record of petitioners' CDP hearing, are incorporated in our findings by this reference. Petitioners resided in California when they timely filed their Petition.

I.    *Underlying Tax Liability*

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for tax year 2018 on or about September 12, 2019, reflecting a household of four, adjusted gross income of $110,599, and a refund due of $2,143. Despite petitioners' purchasing insurance through a health insurance marketplace for tax year 2018, petitioners' original tax return did not include IRS Form 8962, Premium Tax Credit (PTC), and Form 1095–A, Health Insurance Marketplace Statement. Petitioners' 2018 tax return was deemed filed by the IRS on December 16, 2019, with the IRS recording petitioners' joint self-assessment of $5,056 in tax.[2]

On or about September 29, 2019, the IRS issued Letter 12C to petitioners informing them that their 2018 tax return omitted both Forms 8962 and 1095–A.[3] On December 10, 2019, the IRS received these requested forms from petitioners. On Form 8962 petitioners reported household income of $110,599, a federal poverty line of $24,600 based on their household size, and household income of at least 401% of the federal poverty line. Petitioners also reported $20,904 in total advance payments of PTC (APTC) and excess APTC payments for the same

---

[2] Petitioners originally reported tax of $9,056, but after the child tax credit of $4,000, they reported a total tax of $5,056.

[3] Letter 12C is sent by IRS when

- the Health Insurance Marketplace notified us that they made advance payments of the premium tax credit to your or your family's health insurance company to reduce your premium costs for the tax year the letter references and

- you didn't include the Form 8962, Premium Tax Credit, to reconcile the advance payments that were paid on your behalf when you filed your individual tax return for the tax year the letter references.

*Reconciling Your Advance Payments of the Premium Tax Credit*, IRS, https://www.irs.gov/individuals/reconciling-your-advance-payments-of-the-premium-tax-credit (last updated Aug. 27, 2025).

[*3] amount.[4] On March 16, 2020, following internal procedures the IRS adjusted petitioners' 2018 tax return and made an additional tax assessment of $20,904 (Assessment) relating entirely to the PTC.

II.     *Petitioners' CDP Hearing*

On October 27, 2021, the IRS issued a Notice of Intent to Levy and Your Collection Due Process Right to a Hearing seeking to collect petitioners' 2018 balance due, which at the time was $27,297. In response petitioners' representative, Woodford G. Rowland, prepared and submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated November 24, 2021. On the Form 12153 petitioners proposed an installment agreement as a collection alternative to the proposed levy and, within the "other reason" section, stated:

> Taxpayers do not believe that they agreed to this assessment and do not understand it. If the assessment is correct, taxpayers dispute the penalties because of the IRS's inactivity on the matter during the pandemic. If there is a liability, taxpayers request an installment agreement.

By letter dated February 4, 2023, the IRS acknowledged receipt of petitioners' Form 12153 and forwarded their request for a CDP hearing to Appeals. Settlement Officer (SO) Michelle DiPietro received petitioners' CDP hearing request on or about February 28, 2023. Shortly after receiving the case SO DiPietro confirmed she had no prior involvement with it and performed an initial analysis regarding their CDP request. SO DiPietro sent petitioners and their representative a letter dated May 11, 2023, scheduling a CDP hearing for June 21, 2023. Before the CDP hearing SO DiPietro, petitioners, and their representative held several phone calls to discuss the balance due. By fax dated June 15, 2023, petitioners' representative's office requested that petitioners' June 21, 2023, CDP hearing be rescheduled. Petitioners' representative also requested a copy of petitioners' 2018 account transcript, and he referenced the IRS notice letter CP22A dated March 16, 2020, sent to petitioners reflecting an increase in tax of $20,904 to their 2018 tax return.

---

[4] On their original return petitioners did not report the PTC on line 70 of Schedule 5, Other Payments and Refundable Credits, nor did they report an APTC on line 46 of Schedule 2, Tax.

[*4] By facsimile dated July 11, 2023, petitioners, through their representative, submitted a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Then by facsimile dated August 10, 2023, petitioners' representative sent a letter to SO DiPietro disputing the Assessment made by the IRS of $20,904 on petitioners' 2018 account transcript. In the facsimile, petitioners' representative stated:

> In a nutshell, the assessments against my clients were not properly made, I ask that you make that determination and formalize it in your notice of determination, and see to it that all assessments are abated. The transcript shows the item giving rise to this case as follows: "290 Additional tax assessed 20200905 03-16-2020 $20,904,00." No reason or further description of the item is provided. IRS can only collect taxes that have been assessed and validly assessed. IRS may collect taxes shown on the taxpayer's return, Section 6201(a)(1). The transcript shows that the tax return was filed on 12/16/2019 showing tax of $5,056 and that amount was assessed. The assessment that concerns us was made three months later on 03/16/20, Clearly, that assessment is not an assessment of taxes shown on the return, IRS may make a summary assessment if there's been a math error or clerical error. Section 6213(b)(1). However, IRS must give the taxpayer notice and give the taxpayer the opportunity to dispute the assessment. There is no evidence that the $20,904 assessment was based on a math or clerical error. Finally, IRS may assess a deficiency in tax under procedures whereby the taxpayer is given a notice of deficiency (90-day letter) and has been given an opportunity to have the issues decided by the Tax Court. There is no evidence here that the IRS went through these deficiency procedures.

On January 23, 2024, Appeals issued a Notice of Determination Concerning Collection Actions under Sections 6320 or 6330 of the Internal Revenue Code. In consideration of petitioners' challenge to their underlying tax liability, SO DiPietro stated as follows:

> The settlement officer determined the increased assessment was completed in accordance with IRS policies

**[\*5]** and procedures. You omitted required forms from your original return filing. Once the missing forms were submitted, the Internal Revenue Service adjusted your account in accordance with the originally omitted documents. You did not submit any documentation to support your general claim that the Service was required to issue a SNOD. Beside your general statement, you did not submit an amended return or substantive reconsideration request. Based on the information available, the liability at issue was properly assessed and the balance due is valid, due and owing.

Petitioners initially sought an installment agreement as part of their CDP request. Later, petitioners withdrew their request for an installment agreement, notwithstanding the fact that they were eligible for a streamlined agreement with the IRS for $420 per month.

As part of Appeals' determination SO DiPietro also considered petitioners' penalty abatement request. She sustained the failure to file addition to tax after determining that petitioners failed to establish reasonable cause, failed to exercise ordinary care and prudence, and were otherwise ineligible for first-time penalty abatement on account of their prior failure to timely file a tax return.[5]

OPINION

I.   *Standard of Review*

We have jurisdiction to review Appeals' determination pursuant to section 6330(d)(1). *See Murphy v. Commissioner*, 125 T.C. 301, 308 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the determination regarding the underlying liability de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Although the term "underlying tax liability" is not defined in section 6320 or 6330, we have said it is reasonable to interpret the term as a reference to the amounts that the Commissioner assessed

---

[5] SO DiPietro did not consider petitioners' request for abatement of interest, since she determined petitioners failed to properly establish their claim or otherwise specify grounds for their request.

**[\*6]** for a particular tax period. *See Montgomery v. Commissioner*, 122 T.C. 1, 7 (2004).[6]

We review all other determinations for abuse of discretion. *Sego*, 114 T.C. at 610. An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law. *Murphy*, 125 T.C. at 308.[7]

Here, we are faced with a question of law, i.e., whether the Commissioner must issue a Notice of Deficiency before assessment; therefore, our holding will not depend upon a standard of review since we must reject erroneous views of the law. *See Kendricks v. Commissioner*, 124 T.C. 69, 75 (2005).

II.     *Legal Background*

The Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), enacted section 36B, which allows a refundable tax credit known as the PTC. ACA § 1401(a), 124 Stat. at 213. The PTC assists eligible taxpayers with the costs of their premiums for health insurance purchased through an exchange. *See* I.R.C. § 36B.

A taxpayer generally qualifies for the PTC if for the taxable year she has a household income that is at least 100%, but not greater than 400%, of the federal poverty line amount for the taxpayer's family size. I.R.C. § 36B(c)(1)(A); Treas. Reg. § 1.36B-2(b)(1). The federal poverty line amount is established by the most recently published poverty guidelines in effect on the first day of the open enrollment period preceding that taxable year. I.R.C. § 36B(d)(3); Treas. Reg. § 1.36B-1(h). For taxable year 2018, 100% of the federal poverty line for a family of

---

[6] In this regard the term "underlying tax liability" may encompass "an amount assessed following the issuance of a notice of deficiency under section 6213(a), an amount 'self-assessed' under section 6201(a), or a combination of such amounts." *Montgomery*, 122 T.C. at 8.

[7] Because this case would ordinarily be appealable to the U.S. Court of Appeals for the Ninth Circuit, we base our decision on the administrative record relied on by the Appeals officer during the CDP hearing. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases.

[*7] four in the continental United States was $24,600, and 400% was $98,400.[8]

Household income is defined as the modified adjusted gross income (MAGI) of the taxpayer plus the MAGI of family members (1) for whom the taxpayer properly claims deductions for personal exemptions and (2) who were required under section 1 to file a federal income tax return. I.R.C. § 36B(d); Treas. Reg. § 1.36B-1(d) and (e)(1).

ACA § 1412, 124 Stat. at 231, allows the Secretary to authorize APTC payments on behalf of qualifying taxpayers. In such circumstances a taxpayer elects to have the Bureau of Fiscal Services pay the APTC directly to her insurance carrier to help cover the cost of insurance premiums during the year. ACA § 1412(c)(2)(A), 124 Stat. at 232. The amount of the payment is based upon the estimated amount of the PTC which the taxpayer may be entitled to claim on her return. The APTC may cover some or all of the taxpayer's monthly premiums for a health insurance plan.

A taxpayer who has received the APTC is required to reconcile the APTC payments made during the year with the amount of the PTC for which she is eligible. If the total APTC payments exceed the amount of the PTC for which she is eligible, she owes the excess as a tax liability, subject to a repayment limitation in section 36B(f)(2)(B). I.R.C. § 36B(f)(2)(A); ACA § 1401(a), 124 Stat. at 219; Treas. Reg. § 1.36B-4(a)(1). This repayment limitation applies only to taxpayers whose household income is less than 400% of the federal poverty line amount. I.R.C. § 36B(f)(2)(B)(i); Treas. Reg. § 1.36B-4(a)(3).

III.    *Analysis*

Petitioners, who have a family of four, reported MAGI of $110,599; this amount is greater than $98,400 or 400% of the federal poverty line amount applicable for tax year 2018. *See* I.R.C. §§ 1, 36B(c)(1)(A), (d); Treas. Reg. § 1.36B-1(d), (e), (h). Because petitioners' household income for their family size is greater than 400% of the federal poverty line amount, they do not qualify for the PTC. *See* I.R.C. § 36B(a), (c)(1)(A); Treas. Reg. § 1.36B-2(a) and (b)(1). Since petitioners do not qualify for the PTC, they owe the APTC payments of $20,904 made on their behalf as a tax liability. *See* I.R.C. § 36B(f)(1)

---

[8] The federal poverty guidelines are revised at least annually and are released by the Department of Health and Human Services. 42 U.S.C. § 9902(2), (4). The applicable federal poverty guidelines are provided in the instructions for Form 8962.

**[\*8]** and (2); Treas. Reg. § 1.36B-4(a)(1). The repayment limitation does not apply because petitioners' household income is greater than 400% of the federal poverty line amount. *See* I.R.C. § 36B(f)(2)(B)(i); Treas. Reg. § 1.36B-4(a)(3).

The question here, however, is not whether petitioners are eligible to receive the PTC. The question for us to decide is whether the IRS was legally obligated to issue petitioners a Notice of Deficiency in assessing the correct amount of tax due.

The facts before us are not disputed. Petitioners' original return did not account for their receipt of the APTC. Upon request by the IRS petitioners furnished a completed Form 8962 that reported their MAGI to be $110,599—more than 401% over the federal poverty line of $24,600. The Form 8962 also reported that petitioners were not eligible to receive the PTC and, in Part III, reflected an excess APTC of $20,904. Form 8962, however, does not ultimately determine an amount of tax due from petitioners. Furthermore, petitioners' return, as originally filed, failed to account for the PTC. Therefore, and upon receipt of information received in Form 8962, it was necessary for the IRS to determine whether petitioners had a deficiency in tax. *See* I.R.C. § 6211.

On brief petitioners contend that Congress provided protections to taxpayers from inappropriate assessments. Petitioners argue that the IRS adjusted their 2018 tax return and determined that a deficiency in tax was due, and the IRS was therefore obligated to issue a Notice of Deficiency under the deficiency procedures of subchapter B of chapter 63 of subtitle F of the Code, namely sections 6211 through 6215. We agree.

In rebuttal respondent argues that petitioners reported their own excess APTC repayment and that the IRS processed petitioners' received Form 8962 with their submitted return. Respondent contends that the Assessment of the excess APTC with the submitted return is evidenced on petitioners' IRS account transcript, which shows the Assessment in the "Posted Return Information." Citing section 6201(a)(1), respondent contends that the IRS merely assessed additional tax due as reported by petitioners. Finally, respondent seeks to distinguish some of our prior cases dealing with the APTC, namely *McGuire v. Commissioner*, 149 T.C. 254 (2017), *Walker v. Commissioner*, T.C. Summary Op. 2017-50, *Grant v. Commissioner*, T.C. Memo. 2018-119, and *Kerns v. Commissioner*, T.C. Memo. 2019-14. We do not find respondent's arguments to be compelling.

**[\*9]** Section 6201(a) does authorize and require the IRS to make assessments of all tax (including interest, additional amounts, additions to tax, and assessable penalties) imposed by the Code.[9] If there is a "deficiency," the IRS is further required to provide the taxpayer an opportunity for judicial review before assessment. I.R.C. § 6213(a). The Code defines a deficiency as "the amount by which the [income, gift, estate, or excise] tax imposed . . . exceeds" the excess of the sum of "the amount shown as the tax by the taxpayer upon his return" plus any previously assessed amounts, over "the amount of rebates . . . made." I.R.C. § 6211(a). On the basis of the foregoing plain text of the Code, we find that petitioners' legal argument that the Assessment is a deficiency determination under the Code is well supported.

The parties acknowledge that section 36B(f) obligates taxpayers to reconcile the APTC with their allowable PTC on their tax return. However, we reject respondent's additional contention that petitioners' completion of Form 8962 reflects additional tax due which may be assessed under section 6201. We decline to accept the notion that this reconciliation acts as a self-assessment of additional tax. *See, e.g.*, I.R.C. § 36B(f)(2)(B) (limiting the amount of any tax due upon receipt of excess APTC to $600, $1,500, or $2,500, depending on the percentage of the taxpayer's household income above the poverty line). Considering the specific wording of section 36B(f), we conclude that the IRS determined that petitioners owed additional tax notwithstanding their original filing, which is the quintessential definition of a deficiency. Accordingly, the IRS was legally obligated to issue a Notice of Deficiency under the Code.

After considering the matter before us, we conclude the Assessment is a deficiency within the meaning of section 6211(a). Accordingly, we hold respondent's additional tax assessment of $20,904 against petitioners was invalidly made since no Notice of Deficiency was issued. *See* I.R.C. §§ 6212, 6213(a); *Hoyle v. Commissioner*, 131 T.C. 197, 205 (2008) ("If [the] assessment of . . . [the] tax liability was not preceded

---

[9] The Secretary has delegated these duties to the Commissioner, who has delegated them in turn to other IRS officials. *See* Treas. Reg. §§ 301.6201-1(a), 301.7601-1, 301.7701-9. Assessment is "the formal recording of a taxpayer's tax liability." *Baltic v. Commissioner*, 129 T.C. 178, 183 (2007); *see* I.R.C. § 6203.

**[\*10]** by a notice of deficiency as required by section 6213(a), the assessment is invalid."), *supplemented by* 136 T.C. 463 (2011).[10]

As part of a CDP hearing an SO must verify that a valid notice of deficiency was issued to the taxpayer. *See* I.R.C. § 6330(c)(1); *Hoyle*, 131 T.C. at 200; *Snodgrass v. Commissioner*, T.C. Memo. 2016-235, at \*10. Accordingly, as a general rule, if the Commissioner has not duly mailed a Notice of Deficiency, no collection of an assessment of the deficiency may proceed. *Manko v. Commissioner*, 126 T.C. 195, 200–01 (2006); *Freije v. Commissioner*, 125 T.C. 14, 34–37 (2005). Inversely, a collection action will not be sustained where the underlying liability is premised on an invalid assessment. *Hoyle*, 131 T.C. at 205; *Freije*, 125 T.C. at 34–37.

An Appeals officer abuses his discretion if his determination was grounded in an error of law or rested on a clearly erroneous assessment of the facts, or if he applied the correct law to facts that were not clearly erroneous but ruled in an irrational manner. *See Fargo v. Commissioner*, 447 F.3d 706, 709 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13; *United States v. Sherburne*, 249 F.3d 1121, 1125–26 (9th Cir. 2001). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

SO DiPietro has determined that no Notice of Deficiency was necessary in this case; however, on the basis of our holding above, this determination was a legal error. Accordingly, we further hold that Appeals' determination constitutes an abuse of discretion. *See* I.R.C. § 6330(c)(1), (3)(A).

IV.   *Conclusion*

With respect to the proposed levy collection action before us—and having determined the IRS failed to issue a Notice of Deficiency despite

---

[10] We acknowledge the parties' stipulation that the assessment made on March 16, 2020, "was not a mathematical or clerical error assessment pursuant to I.R.C. § 6213." A mathematical or clerical error is defined to include, among other things, "an error in addition, subtraction, multiplication, or division shown on any return" and "an omission of information which is required to be supplied on the return to substantiate an entry on the return." I.R.C. § 6213(g)(2)(A), (D).

**[*11]** being legally required to do so—we hold that the IRS may not proceed with collection of the Assessment.

We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for petitioners.*